## Rider v. Don Spangler Ford, Inc.

*James Bryant,* for plaintiff.
*Lewis Steinberg,* for defendant.

BROWN, *P.J.,* November 25, 1978—On July 18, 1978, plaintiff, Ernest L. Rider, filed a complaint alleging that on or about June 30, 1978, he attempted to purchase a used vehicle from defendant, Don Spangler Ford, Inc. Leaving a $20 deposit with defendant, he was informed that the mileage as shown in the vehicle was accurate. Plaintiff then checked with the previous owner of the vehicle to find that the mileage as shown on the odometer was less than when sold by the previous owner to defendant. Plaintiff then returned to defendant's place of business on July 1, 1978, and attempted to finalize the purchase of the vehicle whereupon he was informed that the vehicle had been sold and that his deposit would be refunded.

▉ Plaintiff brings this complaint under Title IV, §§401-411 of the Motor Vehicle Information and Costs Savings Act of October 20, 1972, 86 Stat. 961, as amended, 15 U.S.C.A. §1981 et seq. Defendant filed preliminary objections arguing that since plaintiff was neither a purchaser nor a transferee of the vehicle, he has no standing to sue under the act. This case is one of first impression. A search by the court has revealed no case arising under this act wherein plaintiff is neither a buyer nor a transferee. On the other hand, no case law has been found in which a plaintiff was denied standing because he was not a purchaser or a transferee.

Section 1981 of the act states the purpose of the act. Although this section specifically mentions "purchasers," in reading the section as part of the whole act, the courts have recognized that the purpose of these provisions is to punish odometer tam-

perers and to reward those who discover such tampering and bring it to the attention of the courts: 28 A.L.R.Fed. 584, 589, §2[a]: Delay v. Hearn Ford, 373 F. Supp. 791 (D.S.C. 1974). The Delay court, which was the first court to deal with this statute, interpreted the intent of Congress in section 1981 by stating that "[i]t is obvious that Congress took a dim view of anyone who tampered with an odometer in order to make a used car appear to be a more attractive purchase to the prospective buyer. In effect, this statute, for that reason, outlaws odometer tampering." Delay, supra at 794. At least one court has read the Congressional purpose in the enactment of the odometer requirements of section 1981 to be to prohibit tampering with motor vehicle odometers, and to establish safeguards for the protection of consumers in motor vehicle sales: Clayton v. McCary, 426 F. Supp. 248 (N.D.Ohio 1976). The findings of Congress under section 1981 are that "purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; that an accurate indication of the mileage traveled by the motor vehicle assists the purchaser in determining its safety and reliability," and that the purpose is "to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers." A purchaser would normally check the odometer before he completes the sales transaction as one of many factors in his decision to buy a car. He is technically a prospective purchaser until he executes a transfer of the ownership document. As other courts have implied by using the words "prospective purchaser" and "consumers" this court must interpret this section to include "prospective" or "at-

tempted" purchasers by implication, as well as the stated purchasers, because a person, when searching for a car to buy, is entitled to rely heavily on the odometer information to assist him in determining the vehicle's condition, value, safety and reliability. Therefore, since the act deals generally with the buyer/seller relationship in motor vehicle sales, it must apply not only to purchasers and transferees, but also to prospective and attempted purchasers, since prospective and attempted purchasers belong in that class protected by the act.

While section 1981 does state that one of the purposes of the act is to provide safeguards for the protection of purchasers, it nowhere states that it is providing remedies for purchasers whose rights have been violated under the statute. Absent specific language confining the remedy provided by section 1989 to purchasers, section 1981 cannot stand for the proposition that non-purchasers are not entitled to the relief provided by section 1989.

This position is supported by the discussion of this act in 28 A.L.R.Fed. 485, 597, which states that:

"Although the court in [a] foregoing opinion [Delay, supra] specifically indicated that the purpose of the statute was to punish odometer tamperers by imposing civil penalties upon them and to reward purchasers who discover such tampering and bring it to the attention of the federal courts, the language of 15 USCS §1989(a), which provides that any person who, with intent to defraud, violates any provision of 15 USCS §§1981-1991 shall be liable, does not expressly indicate to whom that liability flows. It has apparently been left for future court decisions to determine whether a nonpurchaser who is aware of odometer tampering may

institute an action to recover the prescribed penalty imposed upon the tamperer."

Congress in drafting section 1989, under which plaintiff is bringing this action, did not specifically state to whom defendant would be liable but only that: "Any person, who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable . . ." This section of the act is therefore not excluding persons who are not purchasers or transferees, as is, for example, section 1988. By implication, it should include a prospective purchaser.

This premise is further supported by a discussion of section 1984 of the act in Delay, supra, at 795. The court found that certain actions by defendant, specifically rolling back the odometer, shown to have occurred were sufficient "to prove an intentional act to defraud prospective purchasers in violation of the statutes in question." Even though this case deals with a plaintiff buyer and defendant seller, the court appears to find that rolling back the odometer to defraud a prospective purchaser is a violation of the statute, thereby implying that a violation occurs before the sale is consummated. This would necessarily give a prospective purchaser who is being defrauded standing also.

The issue arises as to whether or not plaintiff in this case could bring an action under section 1988 of this act. This is the only section in the act which deals with a transferor and transferee relationship providing a cause of action specifically for a transferee, and is the only section dealing specifically with a written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle. The regulations concerning odome-

ter disclosure requirements as prescribed by the secretary appearing at 49 C.F.R. §580.1 et seq. define transferee as "any person to whom the ownership in a motor vehicle is transferred by purchase, gift, or any means other than by creation of a security interest." Since plaintiff in this case never purchased the vehicle and therefore is not a transferee, he would be excluded from bringing suit under this section.

Mataya v. Behm Motors, Inc., 409 F. Supp. 65, 68 (E.D.Wisc. 1976), cited by both plaintiff and defendant in this case, does not state that one must be a "transferee" in order to have a cause of action under this act, even though it finds that the husband who negotiated the purchase of a used automobile and remained responsible for the debt was the transferee for purposes of the act although the automobile was placed in his wife's name for purposes of financing. Finding plaintiff a "transferee" was necessary in this case in order to bring an action under §1988 of the act. The court further stated in its discussion that "[t]he statutory and administrative language evince an intent to expansively prescribe the class of persons to be protected by the Act and, correspondingly, the class of persons who may bring suit thereunder." Since the Mataya court interpreted the Congressional intent as expanding rather than narrowing the class of plaintiffs, there is justification for including a prospective purchaser as a person to be protected by the act.

Two cases were cited by defendant in his brief: Romans v. Swets Motors, Inc., 428 F. Supp. 106 (E.D.Wisc. 1977), and Coulbourne v. Rollins Auto Leasing Corp., 392 F. Supp. 1198 (D.Del. 1975), both for the proposition that a transfer is necessary under the act. In both, the discussion centered

around a cause of action brought under section 1988 of the act which is the only section dealing with the transfer of ownership of a motor vehicle and requiring a transferor and transferee as defined by the rules in 49 C.F.R. §580.3. Since plaintiff in the present case is not bringing his action solely under section 1988, he need not be a transferee as was required in the above cases.

█ Defendant also argues that plaintiff does not have a cause of action because no damages were sustained by him. However, in Delay, supra at 796, the court held that the statute in section 1989(a) does not require that plaintiff be hurt as a prerequisite to recovery. If he is financially damaged, he may recover treble the actual damages, but if he is not hurt, he may obtain the alternative remedy of $1,500. "To construe the statute to require actual damage to the purchaser would effectively gut the statute of its alternative remedy." Therefore, even though plaintiff in the present case may not have suffered actual damages, he may still recover under the alternative remedy provided by section 1989(a).

Based upon the foregoing discussion, it would be the court's position that standing to sue under the statute in question must be determined by an analysis of the entire act. The starting point would be section 1989 which creates the cause of action against any person who, with intent to defraud, violates any requirement imposed under subchapter IV (i.e., sections 1981-1991). Significantly, section 1989 does not limit the ownership of the cause of action to purchasers or transferees. Any such limitation must therefore be imposed by the specific language of the section under which relief is being sought. Section 1988 prescribing certain dis-

closure requirements does limit those requirements to transferees. Thus, a cause of action predicated upon a violation of section 1988 could be maintained only by a transferee. However, plaintiff's complaint does not rely solely on a violation of section 1988. Paragraph 7a. in referring to repairing, replacing, or altering the odometer could constitute a violation of section 1987. Paragraphs 7d. and e. alleging a failure to affix the appropriate notice to the door and a failure to turn the odometer back to zero are items that are regulated by section 1984. Neither of these sections (i.e., section 1984 or section 1987) indicate that the requirements are owed only to a transferee.

It could be argued that this particular statute opens the door for any person to bring suit regardless of the absence of any relationship with the defendant. However, the court is not taking that position. The peculiar facts of this case involve a plaintiff who alleges that he placed a deposit of money on the vehicle in question with the understanding that he would buy it. The only reason he did not buy it was because defendant subsequently refused to sell it to him. It can hardly be said that plaintiff did not occupy a business relationship with defendant even though the transaction never materialized. The fact that plaintiff placed a deposit on the vehicle would probably entitle him to the status of a quasi purchaser or transferee if it were necessary for him to have such a status to maintain the action.

Finally, it can be observed that the act under consideration is an expansive one which is consumer oriented. Arguments can be made that it is too expansive and too one-sided in granting relief to a large class of persons. The appropriate forum for

these arguments is not the judiciary, but Congress which drafted and enacted the statutory language which must be applied and interpreted by the courts. Absent constitutional defects, the legislative judgments made by Congress must be upheld.

## ORDER

And now, November 25, 1978, based upon the foregoing memorandum, it is hereby ordered that defendant's preliminary objections regarding plaintiff's standing to sue be dismissed, and that defendant be allowed 20 days from the filing of this order in which to file an answer.